# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID TRUGLIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:18-CV-00746-SRU |
| | ) | |
| THOMAS P. MALNATI. and | ) | |
| TTC INVESTMENTS I, LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | JUNE 13, 2018 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The defendants, Thomas P. Malnati, Esq. ("Malnati") and TTC Investments I, LLC ("TTC") (collectively, "Defendants"), submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.   Preliminary Statement

The named Plaintiff has asserted on behalf of himself and a class of persons purportedly similarly situated federal statutory causes of action under the Fair Debt Collection Practices Act, codified at 15 U.S.C. §§ 1691 *et seq.* ("FDCPA"), in a Complaint dated May 2, 2018 (the "Complaint").  Defendants Thomas P. Malnati, Esq. ("Malnati") and TTC Investments I, LLC ("TTC") seek to dismiss with prejudice all claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The Plaintiff's claims target efforts to collect municipal water and sewer use liens that were sold by the City of New Britain, Connecticut (the "City") to a third party and, ultimately, assigned to TTC. The Defendant, Malnati, is alleged to have sent the Plaintiff a collection letter,

1

via USPS, which failed to properly notify the Plaintiff that any dispute regarding the amount or validity of the liened municipal water and sewer use charges "must be made in writing." *Complaint* ¶ 29. The Plaintiff alleges that Defendants' omission of the phrase "in writing" from the subject collection letter constitutes a violation of the FDCPA, specifically 15 U.S.C. § 1692e and 15 U.S.C. § 1692g.

The Defendants move to dismiss the Complaint with prejudice on the grounds that the municipal water and sewer use charges and fees sought by TTC are not a "debt" as defined by the FDCPA.  *See* Boyd v. J.E. Robert Co., Inc., 765 F.3d 123 (2d Cir. 2014).  Instead, they constitute mandatory obligations incidental to property ownership in the City of New Britain, akin to municipal property taxes.  In the alternative, assuming the municipal liens qualified as a debt, neither Malnati nor TTC are "debt collectors" within the meaning of the FDCPA.  TTC is not a debt collector and has no liability under the FDCPA as established by the Supreme Court's decision in Henson v. Santander Consumer USA Inc., 137 S.Ct. 1718 (2017).  The conclusory allegations that Malnati is a debt collector are insufficient to state a claim upon which relief can granted under the FDCPA.

## II.    **Statement of Facts**

Accepting the allegations of the Complaint as true for the purposes of the motion to dismiss, the facts alleged by the Plaintiff are as follows:

Prior to October 5, 2017, the Plaintiff incurred an obligation to the City of New Britain for failing to pay mandatory municipal water and sewer use charges and fees. *Complaint ¶ 15*. In accordance with Connecticut General Statutes § 7-239 and 7-258, the City of New Britain assigned, for consideration, its liens filed with the municipal tax collector to secure unpaid water

and sewer use charges.[1]  The subject liens were assigned, through a third party, to TTC.

*Complaint ¶ 16*.  On or about October 5, 2017, Malnati sent a collection letter to the Plaintiff

seeking to recoup the delinquent municipal water and sewer use liens. *Complaint ¶ 20*. The

collection letter provided, in relevant part, that:

> Unless you dispute the validity of the debt or any portion thereof within thirty
> (30) days after receipt of this notice, the debt will be assumed to be valid.  If you
> notify the undersigned within thirty (30) days of receipt of this notice that the debt
> or any portion thereof is disputed, verification of the debt will be obtained from
> the City of New Britain and a copy of such verification will be mailed to you."
> *Complaint ¶ 22*.

The remainder of the Plaintiff's Complaint consists of threadbare legal conclusions.

By way of attached exhibits, the Defendants offer the following clarifying information. In

2016, the City, a municipal corporation and political subdivision of the State of Connecticut

assigned its real property, water and sewer use liens to Cheswold (TL), LLC in accordance with

Connecticut General Statutes ("C.G.S.") §§ 12-195h, 7-239 and 7-258. [2] (Assignment attached

hereto as <u>Exhibit A</u>).  The Assignment was recorded on the New Britain Land Records at

Volume 1944, Page 1134.  The Assignment contained the following language:

> By execution of this Assignment, the Assignor is assigning, and the Assignee is
> assuming, all of the rights at law or in equity, obligations, powers and duties as
> the City of New Britain and the City's tax collector would have, with respect to

---

[1] Connecticut General Statutes § 7-258 provides, in relevant part:"[a]ny municipality, by resolution of its legislative body, may assign, for consideration, any and all liens filed by the tax collector or collector of sewerage system connection and use charges to secure unpaid sewerage connection and use charges as provided under the provisions of this chapter…The assignee or assignees of such liens shall have and possess the same powers and rights at law or in equity as such municipality and municipality's tax collector would have had if the lien had not been assigned with regard to the precedence and priority of such lien, the accrual of interest and the fees and expenses of collection. <u>Conn. Gen. Stat. § 7-258(b)</u>.

Connecticut General Statutes § 7-239 provides, in relevant part: "[a]ny municipality, by resolution of its legislative body, may assign, for consideration, any and all liens filed by the superintendent of the waterworks system or tax collector to secure unpaid water charges as provided under the provisions of this chapter…The assignee or assignees of such liens shall have and possess the same powers and rights at law or in equity as such municipality and municipality's tax collector would have had if the lien had not been assigned with regard to the precedence and priority of such lien, the accrual of interest and the fees and expenses of collection." <u>Conn. Gen. Stat. § 7-239(c)</u>.

[2]Cheswold (TL) LLC is a Delaware limited liability company.

the above liens, if the liens had not been assigned with regard to precedence and priority of such liens, the accrual of interest, charges, fees and expenses of collection, pursuant to Connecticut General Statutes § 12-195h, 7-254(c), §7-258(b) and other relevant statutes.

On August 29, 2016, Cheswold assigned the City's municipal sewer and water liens to TTC (Assignment attached hereto as Exhibit B).  The Assignment to TTC was recorded on the New Britain Land Records at Volume 1948, Page 561.  The Assignment provided that "Assignee assumes all the rights, obligations, powers and duties of Assignor and City of New Britain with respect to the precedence and priority of said Sewer Liens and Water Liens, the accrual of interest, charges, fees thereon and expenses of collection pursuant to C.G.S. Sections 7-254, 7-258, 7-239 and other relevant statutes."  Attached hereto as Exhibit C are the water and sewer use liens (the "Subject Liens") filed and recorded by the City of New Britain as encumbrances on real property owned by the Plaintiff.  The Plaintiff is identified on the face of the Subject Liens as the "record owner" of said real property.

The Defendants do not dispute that on or about October 5, 2017, Malnati mailed the subject collection letter to the Plaintiff in an effort to collect the aforementioned municipal water and sewer use liens.

**III.    ARGUMENT**

      **a.  Standard of Motion to Dismiss**

A claim must be dismissed under Fed. R. Civ. P. 12(b)(6) unless it "assert[s] a cognizable claim and allege[s] facts that, if true, would support such a claim." Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997).  Although the factual allegations of a complaint must be accepted as true and all inferences drawn in favor of the plaintiff, merely "[g]eneral, conclusory allegations need not be credited…when they are belied by specific allegations." Hirsh v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1995).  Legal conclusions are not afforded any

presumption of truthfulness. <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 534 (2d Cir.

1993) (Internal quotations omitted).  Under the applicable standard, the Complaint fails to state a

legally sufficient claim under the FDCPA.

 The principles utilized by courts in deciding motions to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) are well established.  A district court may dismiss a claim under Rule

12(b)(6) if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is

plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 678 (2009).  The complaint must contain the grounds upon which the claim rests

through factual allegations sufficient "to raise a right to relief above the speculative level."

<u>Twombly</u>, 550 U.S. at 555.  A plaintiff is obliged to amplify a claim with some factual

allegations to allow the court to draw the reasonable inference that the defendant is liable for the

alleged conduct. <u>Iqbal</u>, 556 U.S. at 678.  A "sheer possibility" that a defendant has acted

unlawfully is insufficient. <u>Id.</u>

 In considering a motion to dismiss for failure to state a claim, the Court should follow a

"two-pronged approach" to evaluate the sufficiency of the complaint. <u>Hayden v. Paterson</u>, 594

F.3d 150, 161 (2d Cir. 2010).  "A court can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>,

556 U.S. at 664.  "At the second step, a court should determine whether the 'well pleaded factual

allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" <u>Hayden</u>, 594

F.3d at 161 (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

The tenet that, for the purposes of a motion to dismiss, the court accepts as true all of the factual allegations in the complaint, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 678. "A plaintiff must provide the grounds of its entitlement to relief beyond mere "*labels and conclusions*." Twombly, 550 U.S. at 555 (emphasis added).

### b. __Municipal Water and Sewer Use Charges in New Britain, CT__

Under Connecticut law, municipal water and sewer use liens are treated similarly to property taxes with respect to the precedence and priority of said water and sewer use liens, the accrual of interest, charges and fees thereon and the expenses of collection. Connecticut General Statutes § 7-239 addresses municipal water use charges, and provides that any such charge not paid within thirty days of the due date shall constitute a lien against the property which "shall bear interest at the same rate as would *unpaid taxes*." Conn. Gen. Stat. § 7-239(b) (emphasis added). "Such a lien…shall not continue for more than two years unless the superintendent of the waterworks system has filed a certificate of continuation of the lien in the manner provided under section 12-174 for the continuance *of tax liens*, and when so continued shall be valid for fifteen years." Id. (emphasis added).  Such a municipal water use lien "shall take precedence over all other liens or encumbrances except taxes and may be foreclosed against the lot or building served in the same manner as a lien for taxes." Id.

Connecticut General Statutes §§ 7-254 and 7-258 regulate delinquent municipal sewer assessments and connection and use charges. § 7-258 provides, in relevant part:

[a]ny charge for connection with or for the use of a sewerage system, not paid within thirty days of the due date, shall thereupon be delinquent and shall bear interest from the due date at the rate

and in the manner provided by the general statutes for *delinquent property taxes*… Any such unpaid connection or use charge shall constitute a lien upon the real estate against which such charge was levied from the date it became delinquent. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing *property tax liens*. Each such lien shall take precedence over all other liens and encumbrances except taxes and may be foreclosed in the same manner as a lien for *property taxes*. The municipality may by ordinance designate the tax collector or any other person as collector of sewerage system connection and use charges and such collector of sewerage system connection and use charges may collect such charges in accordance with the provisions of the general statutes for the collection of property taxes."

Conn. Gen. Stat. § 7-258(a) (emphasis added).

Pursuant to Special Act, and codified as § 15-4 of the Charter of the City of New Britain, the City established a Water Department and Board of Water Commissioners (the "Department"). Property owners are required to connect to City water and are billed semi-annually. The semi-annual water bills consist of two parts: (1) a fixed meter service charge (determined based upon the size of the meter installed at the property); and (2) a usage charge.

Section 23-19(a) of the City of New Britain Code of Ordinances provides that "[t]he owners of all houses, buildings, or properties used for human occupancy, employment, recreation, or other purposes situated within the city and abutting any street, alley or right-of-way in which there is now located or may in the future be located a public sanitary sewer…may, *at the option of the city* and at the owner's expense, *be required* to install a sanitary sewer connection…" (A copy of all referenced Code provisions are attached hereto as Exhibit D). Section 23-19(b) of the Code of Ordinances  further provides that "[i]t shall be unlawful for any person to construct or repair any privy, privy vault, septic tank, cesspool or other facility intended for the disposal of sewage *if public sanitary sewers are available*." Section 23-94.1 of the Code of Ordinances likewise provides that the "owner of record as of July 1 of each year of the property on which a building is located *shall* be liable for the payment of [public] sewer user charges." (Emphasis added) Sewer use charges, together with interest thereon, shall constitute a

lien upon the property on which the building is located, "and such lien may be foreclosed and such charges may be collected in the manner provided in *section 7-258 of the General Statutes* and other applicable statutes." Code of Ordinances § 23-95.  The City's sewer use charges "shall be collected by the tax collector and turned over periodically to the city finance director and deposited in a special account, separate from other city funds, designated the "wastewater operating fund." This fund shall be used for operation, maintenance and administration of the treatment works and for payment of principal and interest on bonds and notes of the city issued for construction of sewerage facilities." Code of Ordinances § 23-96; *see also* § 23-91 ("The purpose of this division is to establish fair and effective charges for use of the city's sewer system so that the maintenance and operation of the sewer system shall be self-supporting.").

The water and sewer use charges imposed by the City are treated as, and akin to, municipal property taxes.  The charges are imposed to fund a public service and do not involve a purchase of goods or services based upon the exercise of consumer choice.  There is no underlying contractual relationship between City residents and the municipal water and sewer departments.

### c.  The Fair Debt Collection Practices Act, 15 U.S.C. 1691 et seq.

The FDCPA focuses on regulating interactions between "debt collectors" and "consumers," a natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a (3); Ellis v. Solomon and Solomon, P.C., 591 F.3d 130 (2d Cir. 2010).  As stated by the Supreme Court in Henson v. Santander Consumer USA Inc., 137 S.Ct. 1718 (2017), the FDCPA authorizes private lawsuits and fines against "debt collector[s]," defined as anyone who "regularly collects or attempts to collect…debts owed or due….another."  *See also* 15 U.S.C. 1692a (6).  Thus, to maintain an action under the FDCPA a "consumer" must demonstrate that a

"debt collector," attempting to collect a "debt" engaged in conduct prohibited by the FDCPA.  In the absence of a "debt" or a "debt collector," there can be no claim under the FDCPA.  Mabe v. G.C. Services Ltd. Partnership, 32 F.3d 86, 88 (4th Cir. 1994).

The first question that must be addressed is whether the Complaint adequately alleges a "debt" as defined under the FDCPA.  The Act defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a (5).

The statute does not define the statutory term "transaction." However, federal courts analyzing claims under the FDCPA have held that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998); *quoting* Staub v. Harris, 626 F.2d 275, 278 (3d Cir. 1980). *See also* Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004) ("The Act does not define 'transaction,' but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'") (*quoting* Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997)).

The alleged "debts" in this litigation are municipal liens, consisting of water and sewer use charges and fees.  The subject charges and fees are mandatory for property owners connected to the public water and sewerage mains.  The payment by property owners of the water and

sewer use charges associated with the connection does not arise from a consensual consumer transaction or any other type of business dealing, as required to invoke the FDCPA.

### d.  <u>The FDCPA Does Not Govern the Collection of Taxes</u>

It is a well settled principle that the collection of taxes is not subject to the FDCPA.  *See* <u>Staub v. Harris</u>, 626 F.2d 275, 278 (3rd Cir. 1980) ("[t]he relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange with the statutory definition envisages…" and "the Act does not apply to practices occurring in the course of collection of taxes."); *see also* <u>In re Westberry</u>, 215 F.3d 589, 591-93 (6th Cir. 2000) (personal income tax not a consumer debt); <u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379, 400-403 (3rd Cir. 2000) (property tax not a debt); <u>Bunting v. Phillips Lytle LLP</u>, 2011 WL 2516933 at 4 (N.D.N.Y. June 23, 2011) (FDCPA claims against those foreclosing on property tax liens dismissed).

In <u>Beggs v. Rossi</u>, 145 F.3d 511 (2d Cir. 1998), the Second Circuit Court of Appeals held that personal property taxes mandatorily imposed on automobiles by the defendant municipality did not qualify as debts under the FDCPA.  <u>Id.</u> at 512.  In so holding, the Court reasoned that the automobile tax "is not levied upon the purchase or registration of the vehicle *per se*, but rather upon the ownership of the vehicle by the citizen." <u>Id.</u>  Thus, the Court determined that there was "simply no transaction'…of the kind contemplated by statute." <u>Id.</u> Central to the Court's holding in <u>Beggs</u> was the consideration that the "'relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages.'" <u>Id.</u> *quoting* <u>Staub</u>, 626 F.2d at 278.  Under <u>Beggs</u>, an obligation levied upon a citizen as an incident to property ownership does not arise from a "transaction" and thus does not qualify as a debt under the FDCPA.

     **e.**   <u>**The FDCPA Does Not Govern the Collection of Mandatory Municipal Water**</u>
        <u>**and Sewer Use Charges Incurred as an Incident to Property Ownership**</u>

In 2014, the Second Circuit Court of Appeals decided <u>Boyd v. J.E. Robert Co., Inc.</u>, 765

F.3d 123 (2d Cir. 2014). <u>Boyd</u> is directly on point and controlling. In that case, the owners of

New York City property subject to tax and utility liens commenced a putative class action

against the defendant holders of lien certificates and lien collectors, alleging that the defendants

obtained unauthorized attorneys' fees and costs in connection with attempts to foreclosure the

liens, in violation of the FDCPA. The Second Circuit held that liens imposed by New York City

for mandatory water and sewer use charges were not "debts" under the FDCPA. The Court

concluded that "[l]iens for mandatory water and sewer charges imposed by New York City as an

incident to property ownership are not 'debt' under the FDCPA because the relationship between

[property owners] and the City with respect to such charges is akin to taxpayer and taxing

authority and does not entail the type of consumer 'transaction' anticipated by the statute." <u>Id.</u> at

126. <u>Boyd</u> thus makes clear that New York City water and sewer charges "are best treated as

akin to…municipal property taxes" in that they do not involve voluntary consumer transactions.

<u>Id.</u>

     As in <u>Boyd</u>, the Subject Liens in the present matter did not arise from a consensual

consumer "transaction" or any other type of business dealing, as required to invoke the FDCPA.

To the contrary, the City established an administrative scheme for the disbursement of public

utilities to its inhabitants and does not bargain for or enter into agreements with citizens to

determine their water and sewer use obligations. The subject charges and fees are not levied

upon any purchase of services, but rather as an incident to property ownership (the same as

municipal taxes). <u>Beggs</u>, *supra* 145 F.3d at 512; *see also* New Britain Code of Ordinances § 23-

94.1 (Rev. 2017) ("The owner of record as of July 1 of each year of the property on which a

building is located shall be liable for the payment of sewer use charges.").  Although only the owner of the property at the time the charges accrue may be held personally liable for water and sewer use charges, any lien arising out of such charges follows (or "runs with") the property until it is redeemed.  *See* <u>Boyd v. J.E. Robert Co., Inc.</u>, 765 F.3d at 125 n. 1.

Similar to New York, the Connecticut General Statutes and the City's ordinances prescribe that municipal water and sewer use liens are to be treated "as akin to…municipal property taxes." <u>Id.</u> at 126.  The New Britain Code of Ordinances § 23-95 (Rev. 2017) provides that, "[s]ewer user charges, together with interest thereon, shall constitute a lien upon the property on which the building is located, and such lien may be foreclosed and such charges may be collected in the manner provided in section 7-258 of the General Statutes and other applicable statutes."[3]  § 23-95 of the Code of Ordinances further states that, "[s]ewer use charges shall be collected by the tax collector and turned over periodically to the city finance director and deposited in a special account, separate from other city funds, designated the "wastewater operating fund." This fund shall be used for operation, maintenance and administration of the treatment works and for payment of principal and interest on bonds and notes of the city issued for construction of sewerage facilities." Connecticut General Statutes § 7-239 addresses municipal water use charges, and provides that any such charges not paid within thirty days of the due date shall constitute a lien against the property.  A water use lien "*shall bear interest at*

---

[3] Connecticut General Statutes § 7-258(a) provides: "[a]ny charge for connection with or for the use of a sewerage system, not paid within thirty days of the due date, shall thereupon be delinquent and shall bear interest from the due date at the rate *and in the manner provided by the general statutes for delinquent property taxes*…Any unpaid connection or use charge shall constitute a lien upon the real estate against which such charge was levied from the date it became delinquent. *Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens*. Each such lien shall take precedence over all other liens and encumbrances except taxes and *may be foreclosed in the same manner as a lien for property taxes*.  The municipality may by ordinance designate the tax collector or any other person as collector of sewerage system connection and use charges and such collector of sewerage system connection and use charges may collect such charges *in accordance in the provisions of the general statutes for the collection of property taxes*." <u>Conn. Gen. Stat. § 7-258(a)</u> (emphasis added).

*the same rate as would unpaid taxes*.  Such a lien not released of record prior to October 1, 1993, shall not continue for more than two years unless the superintendent of the waterworks system has filed a certificate of continuation of the lien in the manner provided under section 12-174 for the continuance of tax liens, and when so continued shall be valid for fifteen years.  A lien described in this section shall take precedence over al other liens or encumbrances except taxes *and may be foreclosed against the lot or building served in the same manner as a lien for taxes*."  Conn. Gen. Stat. § 7-239(b) (emphasis added); *see also* New Britain Charter § 15-4(k) ("The proceeds of all water rents, and all other receipts and income of the Board of water Commissioners, shall be set apart and applied only to the obligations of said City arising out of the construction, maintenance, and operation of its water system…").  Thus, the City funds its water and sewer infrastructure (a fundamental public service) with revenue it collects through mandatory water and sewer use charges (at rates determined by the City) imposed as an incident to property ownership.

Consequently, as in Boyd and Beggs, the Plaintiff can point to no such consensual, negotiated transaction or business dealing giving rise to the water and sewer obligations secured by the Subject Liens.  The Plaintiff did not negotiate or enter into any contract or agreement with the City with respect to the utility charges.  Nor could he.  The property owned by the Plaintiff is connected to municipal water and sewerage mains and is supplied with water at rates provided by the City.

In sum, the subject municipal water and sewer use liens are not debts under the FDCPA.  Accordingly, the Plaintiff has failed to allege a legally sufficient claim under the FDCPA and both counts of the Complaint should be dismissed with prejudice.

### f.   Neither Defendant is a "Debt Collector" Within the Meaning of the FDCPA

The FDCPA defines a debt collector as, "any person who uses any instrumentality of interstate commerce or the mails in any business, the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (6).   In other words, to the extent that a party is not a debt collector, it cannot be liable for the violation of the FDCPA.   The Defendants are not debt collectors and, therefore, neither is subject to liability under the FDCPA. The Complaint fails to allege facts supporting the conclusory assertions that the Defendants are "debt collectors" and, accordingly, the Plaintiff's cause of action should be dismissed.

#### i.   The Supreme Court Unanimously Held a "Debt Purchaser" is not a Debt Collector under the FDCPA

TTC is a creditor, not a debt collector under the FDCPA.  This distinction is important because the FDCPA applies to debt collectors, but not to creditors. Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998) (a plain reading of the statute reveals that generally, as a matter of law, "creditors are not subject to the FDCPA.").  TTC does not qualify as a debt collector because it does not regularly seek to collect debts "owed…another."

In a recent unanimous decision, the U.S. Supreme Court held that debt purchasers, such as TTC, are not debt collectors subject to the FDCPA. Henson v. Santander Consumer USA, Inc., 137 S. Ct. 1718 (2017).   In Henson, the Court held that individuals and entities who purchase debts originated by someone else and then seek to collect those debts *for their own account* are not "debt collectors" within the meaning of the statute.  The Court reviewed the language of 15 U.S.C. § 1692a(6) and determined that it does not matter how "a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a

later purchase." Id. at 1721.  The Court held "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id.

The only allegations in Plaintiff's Complaint relative to TTC appear in Paragraphs 12 and 13.  In paragraph 12 of the Complaint, Plaintiff alleges that TTC is a debt buyer (Debt Purchaser). Per the Court's decision in Henson, debt buyers are not subject to the FDCPA as a matter of law.  Paragraph 13 of the Plaintiff's Complaint immediately contradicts Paragraph 12 and asserts, without providing any factual support, that TTC is a debt collector within the meaning of the FDCPA.  Paragraph 13 consists of a "threadbare legal conclusion."  The Plaintiff's complaint does not allege that TTC regularly collects or attempts to collect debts owed to another.  Nor can it; the facts required to support such an allegation do not exist. TTC is a debt purchaser/creditor and seeks the redemption of outstanding municipal obligations *for its own account*.  Accordingly, the Complaint fails to state a claim under the FDCPA against TTC.  All counts against TTC should be dismissed with prejudice.

### ii.   Malnati Has Never Collected or Attempted to Collect Debts

As stated previously, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 678. "A plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Twombly, 550 U.S. at 555.  The FDCPA defines "debt collector" to be anyone who "*regularly* collects or attempts to collect ... *debts* owed or due ... another." 15 U.S.C. § 1692a(6).  Nowhere, does Plaintiff allege that Malnati regularly collects debts.  Without an allegation that Malnati regularly collects debts Plaintiff fails to state a claim upon which relief can be granted under the FDCPA.

It is not possible for the Plaintiff to allege that Malnati regularly collects debts.  Since 1998, Malnati has specialized solely in municipal and county tax enforcement.  There is no

question that taxes are not FDCPA debts. *See discussion above*.  Collection of the liens at issue in this case is the first and, to date, only instance where Malnati has been involved with water and sewer use liens.  Furthermore, it is only in reliance on the Second Circuit's decision in <u>Boyd</u>, *supra*, holding municipal water and sewer use liens not to be FDCPA debts that Malnati is involved with collecting these liens.  This one and only instance does not qualify as "regularly".

Although the FDCPA does not define the term "regularly," the term is intended to include those who collect debts for others in the ordinary course of business and excludes those who collect debts for others in an isolated or occasional instance. *See* <u>Schroyer v. Frankel</u>, 197 F.3d 1170, 1174 (6th Cir. 1999); *see also* FTC Statements of General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988) (attached hereto as <u>Exhibit E</u>).  Factors considered when determining the "regularity" of debt collection activity include the nature and frequency of debt collection and whether the collection activity is an established part of the individual's or entity's business.  <u>Brown v. Morris</u>, 243 Fed. Appx. 31, 35 (5th Cir. 2007); <u>Lewis v. ACB Bus. Servs., Inc.</u>, 135 F.3d 389, 409 (6th Cir. 1998); <u>Garrett v. Derbes</u>, 110 F.3d 317, 318 (5th Cir. 1997); <u>Goldstein v. Hutton, Ingram, Yuzuk, Gainen, Carroll & Bertolotti</u>, 374 F.3d 56, 61 (2d Cir. 2004).

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's FDCPA claims against TTC and Malnati should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  All claims should be dismissed with prejudice.


Dated: Westport, Connecticut
          June 13, 2018

THE DEFENDANTS,
THOMAS P. MALNATI and
TTC INVESTMENTS I, LLC


By:  /s/ Gregory S. Kimmel
        Gregory S. Kimmel
        Berchem Moses P.C.
        1221 Post Road East, Suite 301
        Westport, CT 06880
        (203) 227-9545
        Federal Bar No. ct28203
        gkimmel@berchemmoses.com

**<u>CERTIFICATION</u>**

I hereby certify that on June 13, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ Gregory S. Kimmel
Gregory S. Kimmel

**EXHIBIT A**

## **EXHIBIT B**

**EXHIBIT C**

**EXHIBIT D**

**EXHIBIT E**

**<u>UNREPORTED CASES</u>**