**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **DAVID TRUGLIO, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **Civil Case No.:** |
| | **3:18-cv-00746-SRU** |
| **-against-** | |
| **THOMAS P. MALNATI. and** | |
| **TTC INVESTMENTS I, LLC,** | |
| **Defendants.** | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)**

---

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:** **(732) 695-3282**
**Fax:** **(732) 298-6256**
*Attorney for the Plaintiff*
*David Truglio*

i

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT**……………………………………...............…….....……....1

**STANDARD OF REVIEW TO BE APPLIED TO DEFENDANT'S MOTION TO
DISMISS THE COMPLANT**……………………………….........................................…….....1

**ARGUMENT**......................................................…………………………….....…..2

      **POINT I.**      <u>**Defendants Sought To Collect A 'Debt' Encompassed
By The FDCPA**</u>............................................................................3

      **POINT II.**    <u>**Defendants Are 'Debt Collectors' Encompassed By The FDCPA**</u>........10

      **A.** *Henson* **Does Not Apply to "Principal Purpose" Debt Buyers**...............................12

      **B. "Owed or Due Another" Modifies** *Only* **the Second, "Regularly Collects"
Definition of Debt Collector**..........................................................15

      **C. Both "Regular" Debt Collectors and "Principal Purpose" Debt Buyers
Are Regulated By The FDCPA Because They Can Operate Without
Regard to Any Need to Preserve Consumer Good Will**...........................................17

  **IV.**      **CONCLUSION**……………………………………………………19

## TABLE OF AUTHORITIES

*Ali v. Federal Bureau of Prisons*,

    552 U.S. 214 (2008)..................................................................................16

*Ashcroft v. Iqbal*,

    129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...............................................2

*Aubert v. American General Finance, Inc.*,

    137 F.3d 976 (7th Cir.1998)...................................................................17

*Barbato v. Greystone Alliance, L.L.C.*,

    2017 WL 5496047 (M.D. Pa. Nov. 16, 2017)......................................14

*Boyd v. J.E. Robert Co.*,

    765 F.3d 123 (2d Cir. 2014)......................................................................5

*Boyd v. J.E. Robert Co.*,

    No. 05-CV-2455 KAM RER, 2012 WL 4718723 (E.D.N.Y. 2012)....................6

*Brooks v. United States*,

    337 U.S. 49 (1949)...................................................................................16

*Campo v. Sears Holdings Corp.*,

    635 F.Supp.2d 323 (S.D.N.Y.2009).........................................................1

*Chambers v. Time Warner, Inc.*,

    282 F.3d 147 (2d Cir.2002).......................................................................1

*Chenault v. Credit Corp. Solutions, Inc.*,

    2017 WL 5971727 (E.D. Pa. Dec. 1, 2017)..........................................14

*Cortec Indus., Inc. v. Sum Holding L.P.*,

    949 F.2d 42 (2d Cir. 1991)......................................................................10

*Davidson v. Capital One Bank (USA), N.A.*,

    797 F.3d 1309 (11th Cir. 2015)...............................................................11

*Duffy v. Landberg*,

    133 F.3d 1120 (8th Cir. 1998).................................................................16

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,

    374 F.3d 56 (2d Cir. 2004)......................................................................13

*Gonzales v. Arrow Fin. Servs., LLC*,

    660 F.3d 1055 (9th Cir. 2011).................................................................17

*Henson v. Santander Consumer USA, Inc.*,

    137 S.Ct. 1718, 2017 WL 2507342 (2017)................................................................10-12

*Henson v. Santander Consumer USA, Inc.*,

    2014 WL 1806915 (D. Md. May 6, 2014)...................................................................12

*Hester v. Graham, Bright & Smith*,

    289 Fed. Appx. 35 (5th Cir. 2008)...........................................................................13

*HUD v. Rucker*,

    535 U.S. 125 (2002)...................................................................................................16

*Hutto v. Finney*,

    437 U.S. 678 (1978)...................................................................................................16

*Lam v. Am. Exp. Co.*,

    265 F. Supp. 2d 225 (S.D.N.Y. 2003).......................................................................2

*Little v. World Fin. Network, Inc.*,

    1990 WL 516554 (D. Conn. July 26, 1990)..............................................................13

*Lockhart v. United States*,

    136 S. Ct. 958, 194 L. Ed. 2d 48 (2016)..................................................................15

*McMahon v. LVNV Funding, LLC*,

    2018 WL 1316736 (N.D. Ill. Mar. 14, 2018)............................................................14

*Merritt v. Dillard Paper Co.*,

    120 F.3d 1181 (11th Cir.1997)..................................................................................16

*Mitchell v. LVNV Funding, LLC*,

    2017 WL 6406594 (N.D. Ind. Dec. 15, 2017)..........................................................14

*Ofori–Tenkorang v. American Int'l Group, Inc.*,

    460 F.3d 296 (2d Cir.2006).......................................................................................1

*Pipiles v. Credit Bureau of Lockport, Inc.*,

    886 F.2d 22 (2d Cir.1989).........................................................................................9

*Pollice v. Nat'l Tax Funding, L.P.*,

    225 F.3d 379 (3d Cir. 2000)...................................................................................4, 5

*Scheuer v. Rhodes*,

    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)................................................2

*Schlegel v. Wells Fargo Bank, N.A.*,

    720 F.3d 1204 (9th Cir. 2013)......................................................................................13

*Schweer v. HOVG, L.L.C.*,

    2017 WL 2906504 (M.D. Pa. July 7, 2017)...............................................................14

*Skinner v. LVNV Funding*,

    2018 WL 319320 (N.D. Ill. Jan. 8, 2018)..................................................................14

*Tepper v. Amos Fin., L.L.C.*,

    2017 WL 3446886 (E.D. Pa. Aug. 11, 2017).............................................................14

*United States v. Clayton*,

    613 F.3d 592 (5th Cir. 2010)......................................................................................16

*United States v. Gonzales*,

    520 U.S. 1 (1997).......................................................................................................16

*Vaughn v. Air Line Pilots Ass'n*,

    377 F. App'x 88 (2d Cir. 2010)...................................................................................2

*Vincent v. The Money Store*,

    736 F.3d 88 (2d Cir. 2013)...........................................................................................9

*Weiss v. McElwee*,

    No. CV141858JLLJAD, 2016 WL 96144 (D.N.J. Jan. 8, 2016)..................................6

<u>Other Sources</u>

N.Y.C. Admin. Code § 27–2024...................................................................................6

New Britain Code of Ordinances §. 23-93.......................................................................8

New Britain Code of Ordinances §. 23-93(e)...................................................................8

New Britain Code of Ordinances §. 23-93(f)....................................................................8

New Britain Code of Ordinances §. 23-170.......................................................................7

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Complaint, pursuant to FRCP 12(b)(6). As alleged in the Complaint, the Defendant mailed the Plaintiff a Collection Letter dated October 5, 2017. The October 5th letter purported to include a Validation Notice, as required by 15 U.S.C. § 1692g. However, that Validation Notice was facially defective, by failing to advise the Plaintiff that any dispute had to be in writing, as required by the FDCPA.

In its Motion to Dismiss, Defendant does not deny that its Collection Letter failed to comply with the FDCPA. Instead, Defendant first argues that the water and sewer obligations it was seeking to collect are not considered 'debts' under the FDCPA, and that the Defendants therefore need not comply with the statute. Defendant then argues that the Defendants are not 'debt collectors' as defined by the statute. As will be detailed below, neither of these arguments have any merit, and are instead based on abject mis-statements of law and fact.

## STANDARD OF REVIEW TO BE APPLIED TO DEFENDANT'S MOTION TO DISMISS THE COMPLANT

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor. *See, Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002); *Ofori–Tenkorang v. American Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006). In addition to the complaint, the court may also consider (1) any "document incorporated by reference in the complaint" *Campo v. Sears Holdings Corp.,* 635 F.Supp.2d 323, 327–29 (S.D.N.Y.2009); (2) any document the plaintiff "has in [his] possession or had knowledge of and upon which [he] relied in bringing suit" *Chambers,* 282 F.3d at 153; *accord Campo,* 635 F.Supp.2d at 327–29 (indicating that the court may consider, *inter alia,* "documents integral to and relied upon in the complaint, even if not attached or

incorporated by reference") (internal quotation marks omitted); and (3) "facts of which judicial notice may be taken," *Chambers,* 282 F.3d at 153.

To survive a motion to dismiss, a complaint must set out only enough facts to state a claim to relief that is plausible on its face. *See, Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vaughn v. Air Line Pilots Ass'n*, 377 F. App'x 88, 90 (2d Cir. 2010). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Lam v. Am. Exp. Co.*, 265 F. Supp. 2d 225, 229 (S.D.N.Y. 2003). The issue that must be determined by the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## **ARGUMENT**

Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were inadequate, *id.* § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

**POINT I.**   **Defendants Sought To Collect A 'Debt' Encompassed By The FDCPA.**

In the everyday sense of the term, there can be no question that the Defendant sought to collect a 'debt' from the Plaintiff.  Specifically, the Defendant mailed a Collection Letter to the Plaintiff dated October 5, 2017 which advised the Plaintiff that he owed $3,783.96 in 'Water/Sewer' charges, $2,272.63 in 'Interest', $908.48 in 'Collection Fees' and $457.00 in 'Lien and Release Fees'.  *See,* Exhibit A.  Indeed, the Collection Letter informed the Plaintiff – in all caps - that "Thomas P. Malnati, Esq. is a debt collector and any information obtained will be used for that purpose."  *See id.*  Clearly, this Collection Letter sought to collect money allegedly owed by the Plaintiff; in other words, a 'debt'.

Nonetheless, Defendant argues that the term 'debt' means something other than the everyday meaning of the term.  To be sure, the FDCPA does not lend itself to such limitations, broadly defining the term as 'debt' as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S. Code § 1692a(5).  Defendant claims that sewer and water charges are 'obligatory' in Connecticut, and that such charges are therefore not 'transactions' encompassed by the FDCPA.  This argument has zero basis in (1) the FDCPA's plain language, nor in (2) the Connecticut statutes upon which Defendant's argument necessarily relies.

Defendant's entire argument rests on this singular basis: that "water and sewer use charges imposed by the City [of New Britain] are treated as, and akin to, municipal property taxes."  *See,* Docket 11, at 8.  While Defendant submits extensive citations to support its claim that property owners in New Britain may be required to connect to the *sewer* system and pay fees associated

3

with *sewer* usage, there is no parallel support for the claim that *water* usage is treated the same way.[1]  As shown below, the City of New Britain actually treats these two charges quite differently.

Indeed, there would be little basis to argue that *water* usage – which Defendant concedes comprises part of the Plaintiff's debt – is not the sort of 'voluntary transaction' that is encompassed within the FDCPA.  When a resident of New Britain makes the conscious decision to install a lawn sprinkler system and programs the sprinkler system to water the lawn on a daily basis, that resident is aware that his water bill will be far larger than his neighbor who chooses to let his lawn go brown.  This is not an 'involuntary' charge like property taxes; property taxes generally do not vary month to month depending on the voluntary consumption choices made by the residents.  Instead, water usage charges are far more akin to electricity charges, which go up or down monthly, depending on which buttons the resident presses on the air conditioning thermostat.

The Third Circuit was the first Circuit Court to directly address the question raised in this action.  *See, Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000).  The *Pollice* defendant argued, as here, that "water, sewer and tax claims are not 'debts' because there was no 'offer or extension of credit' to homeowners."  *Id.,* at 400-401.   While the Third Circuit agreed that "homeowners' property tax obligations do not constitute 'debts' under the FDCPA", the *Pollice* court concluded that "the homeowners' original obligations to pay the government entities for water and sewer service constituted 'debts,' even though the government entities did not extend homeowners any right to defer payment of their obligations."  *Id.,* at 401.   The Third Circuit

---

[1] Defendant does state that "Property owners are <u>required</u> to connect to City water and are billed semi-annually. The semi-annual water bills consist of two parts: (1) a fixed meter service charge (determined based upon the size of the meter installed at the property); and (2) a usage charge." *See,* Docket 11, at 7 (emphasis added).  There is <u>zero</u> support for this statement in the record, and absolutely nothing cited by the Defendant in support of this proposition.

explained that these "homeowners ('consumers' of water and sewer services) had an 'obligation ... to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services ... primarily for personal, family, or household purposes.' " *Id.,* at 400. Several years later, the Third Circuit reaffirmed this conclusion, specifically clarifying that "the fact that the MCTLA provided a lien to secure the Pipers' [water and sewer] debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005).

As Defendant points out in its Motion, the Second Circuit reached a somewhat different conclusion in *Boyd v. J.E. Robert Co.*, 765 F.3d 123, 126 (2d Cir. 2014). However, Defendant does not mention the Second Circuit's discussion of the *Piper* and *Pollice* holdings, which highlights the reason *why* the Second Circuit reached a different conclusion. To wit, the Second Circuit took care to distinguish the facts before it from the facts before the Third Circuit in the *Piper* and *Pollice* holdings. Addressing these holdings, the Second Circuit found that:

> Even if we were bound by this authority, the character of the water and sewer charges in Pennsylvania—which was essential to the analysis—differed from the character of the charges levied on plaintiffs in this case. Specifically, nothing in the record here suggests that plaintiffs must 'request' water and sewer services in order to be charged by the City. Rather, the charges are levied automatically in connection with the property ownership. Accordingly, the Third Circuit cases are distinguishable from the instant case.

> *Boyd v. J.E. Robert Co.*, 765 F.3d at 126, fn 4.

As the Second Circuit made clear in *Boyd*, the involuntary nature of the New York City water and sewer charges dictated its conclusion that these obligations were not 'debts' encompassed by the FDCPA. As relevant here, New York City <u>requires</u> property owners to connect their property to City water mains, something that New Britain <u>does not</u>. *See, Boyd v. J.E.*

*Robert Co.*, No. 05-CV-2455 KAM RER, 2012 WL 4718723, at *14 (E.D.N.Y. Oct. 2, 2012), <u>citing</u> N.Y.C. Admin. Code § 27–2024 (requiring New York City property owners to connect their property to City water mains).  That distinction was crucial to the *Boyd* court's determination that water charges were not the sort of 'voluntary transactions' contemplated by the FDCPA's definition of the term 'debt'.

The lack of conflict between the Second Circuit's holding in *Boyd* and the Third Circuit's holding in *Pollice/Piper* was recently detailed by the district court in *Weiss v. McElwee*, No. CV141858JLLJAD, 2016 WL 96144, at *3–5 (D.N.J. Jan. 8, 2016).  The Weiss court noted that generally, "sewer charges are distinguishable from property taxes, if they arise from a consensual consumer transaction......whenever a homeowner voluntarily elects to avail himself of municipal water/sewer services, in whatever manner, and thereby incurs an obligation to pay for such services, there is the kind of *pro tanto* exchange contemplated by the FDCPA." *Id.*  Thus, concluded the *Weiss* court, "an obligation to pay for sewer services qualifies as 'debt' only if it arises as a result of a consensual consumer transaction in which a homeowner voluntarily elects or requests to receive the services. In other words, if the amount of the obligation imposed for sewer services is mandatory, then it does not qualify as a 'debt'." *Id.*  As the *Weiss* court noted, "such a distinction was specifically adopted" in the Second Circuit's *Boyd* decision.  *Id.,* at *5, <u>citing</u> *Boyd v. J.E. Robert Co.*, 765 F.3d at 126.

The debt at issue in this action was allegedly incurred as the result of water and sewer usage in the City of New Britain.  The *Pollice* and *Piper* holdings addressed the treatment of sewer and water charges in Pennsylvania. The *Boyd* decision addressed the treatment of those charges in New York City.  None of the decisions cited by Defendant addressed the treatment of water charges in New Britain or anywhere in Connecticut for that matter.  While the *Pollice, Piper* and *Boyd*

holdings are therefore of limited value, they do uniformly indicate that a thorough examination of the treatment of such charges is warranted, in order to determine whether these charges are 'voluntary' or 'obligatory'.

Defendant has done a thorough job laying out New Britain's requirements regarding the use of the City's *sewer* system.[2]   A careful scrutiny of Defendant's briefing reflects no parallel mandatory requirements for the provision of *water* services.   This is no mere oversight either. When perusing New Britain's Ordinances, there is a conspicuous lack of any parallel language, requiring residents to connect their homes to the City's water system.   Clearly, individuals can choose how to get their water (i.e., drill a well, have water delivered, etc).   Absent any requirement for individuals to connect their homes to the City's water system, any decision to do so is a voluntary request for water services, and a concurrent promise to pay for any water consumed.

As can be seen from the New Britain Charter, the City simply treats sewer and water charges differently.   While sewer connections in New Britain are mandatory, water connections are not.   To be sure, a New Britain resident can *apply* to have their homes connected to the New Britain water system.[3]   *If* that New Britain resident ultimately connects his home to the City's

---

[2]As cited by Defendant, Section 23-19(a) of the City of New Britain Code of Ordinances provides that "[t]he owners of all houses, buildings, or properties used for human occupancy, employment, recreation, or other purposes situated within the city and abutting any street, alley or right-of-way in which there is now located or may in the future be located a public sanitary sewer…may, at the option of the city and at the owner's expense, be *required to install a sanitary sewer connection*. Section 23-19(b) of the Code of Ordinances further provides that "[i]t shall be unlawful for any person to construct or repair any privy, privy vault, septic tank, cesspool or other facility intended for the disposal of sewage if public sanitary sewers are available."  *See,* Docket 11, at 7.

[3]*See, Code of Ordinances §. 23-170, entitled 'Application for installation and renewal of water service line':*
> *"*An applicant for the installation of a new water service line, or for the renewal of an old water service line, shall be made by the owner of a property, or their agent, by obtaining a tapping permit at the office of the building department of the City of

water system, then the City uses the amount of water consumption as the basis for the sewer system

charges, on the assumption that the amounts of water going in and water going out will somewhat

align.[4]  However, the City of New Britain is cognizant of the fact that New Britain residents are

not *required* to connect their homes to the City's water system, or to obtain their water from the

City.  In specific recognition of this fact, the City specifically provides a separate mechanism to

calculate sewer usage charges, using estimates based on the water usage of similar buildings.[5]

---

New Britain. The application must state fully and truthfully the purpose for which
the water service line is to be used, provide the proper legal description of the
property to be served and state the official city street and the street number to be
served."

[4] *See, Code of Ordinances §. 23-93, entitled '**Sewer user charge':***
(a)  Water consumption basis. Consideration having been given to the volume of
water discharged to the wastewater system, and that approximately all sewer
users consume all water from a metered source, approximately all wastewater
flows are discharged to the sanitary sewer system, wastewater flows to private
disposal systems or storm drains are metered, the percentage of water consumed
to wastewater flow is approximately equal for all users, the metered flows
include costs for infiltration/inflow transportation and treatment, the public
works department finds that the water consumption method is to be used for
establishing a fair and reasonable charge for the use of the wastewater system.

[5] Compare, *Code of Ordinances §. 23-93(e), entitled 'Computation of water usage from meter
readings for buildings serviced by water company.'("*Water consumption of each building
serviced by the New Britain Water Company, except those set forth in paragraph (c) of this
section, shall be computed in accordance with meter readings obtained by the city water
department")

<u>with</u>

*Code of Ordinances §. 23-93(f), entitled 'Estimation of water consumption for industrial
buildings **not serviced by water company***:
Water consumption of each industrial building **not** serviced by the New Britain
Water Company, shall be estimated by the director of public works, or its
designated agents, servants or employees, on the basis of records it has of water
consumption of similar buildings and uses. In order to expedite such estimate, the
director of public works may require the owner of any industrial building not
serviced by the New Britain Water Company to submit a sworn statement of water
consumption for the year, such statement to be supported by any available records
or other evidence of water consumption. The director of public works may also
require the owner of any industrial building not serviced by the New Britain Water

As expressly recognized by New Britain's Code of Ordinances § 23-93(f), New Britain residents are absolutely <u>not</u> required to connect their homes to the City's water system. Defendant's statement "Property owners are required to connect to City water" (*see,* Docket 11, page 7) is categorically false. Put otherwise, New Britain residents may *voluntarily* apply to have their homes supplied with City water. Once they do so, New Britain residents *voluntarily* elect how much water they want to use, and how much they therefore wish to pay for. There is nothing 'involuntary' about any part of this process.

It is therefore clear that any water usage charges that the Defendant sought to collect from the Plaintiff were therefore 'debts' encompassed within the FDCPA. These obligations are clearly 'debts' in the everyday sense of the word. Absent some Congressional indication that this term was meant to be narrowly construed, it should encompass the voluntary water debts being sought by the Defendant. As the Second Circuit has noted, "because the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013); *see also, Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices"). In this action, there is zero indication that Congress intended to carve out voluntary water charges from the reach of the FDCPA. Absent any such showing, this Court should decline to do so.

---

Company, or not metered, to install and maintain a water meter at the sole expense of such owner.

**POINT II.     Defendants Are 'Debt Collectors' Encompassed By The FDCPA.**

There are two Defendants in this action.  The first is Thomas P. Malnati, Esq., the attorney actually attempting to collect the debt from the Plaintiff.  As to Mr. Malnati, the Plaintiff specifically alleged that this Defendant "is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts alleged to be due another."  *See,* Docket 1, ¶11.[6] While Defendant makes the factual argument that "Since 1998, Malnati has specialized solely in municipal and county tax enforcement..... Collection of the liens at issue in this case is the first and, to date, only instance where Malnati has been involved with water and sewer use liens" (*see, Docket 11,* pages 15-16), those facts cannot possibly be considered on a Motion to Dismiss.  Instead, Plaintiff's allegations must be taken as true, and suffice to allege that Mr. Malnati is a debt collector subject to the FDCPA.  Indeed, the Collection Letter attached to the Complaint similarly contains Mr. Malnati's own representation that "Thomas P. Malnati, Esq. is a debt collector and any information obtained will be used for that purpose."  *See, Exhibit A.*

Defendant's argument as to TTC Investments I, LLC similarly must fail.   Defendant's argument rests entirely on its untenable assertion that the Supreme Court in *Henson v. Santander Consumer USA, Inc*., 137 S.Ct. 1718, 2017 WL 2507342 (2017), held that a debt buyer cannot be a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA") because it is the current owner of Plaintiff's debt that it obtained after default. In a narrow opinion, *Henson* held that an

---

[6] To the extent that this Court determines that additional allegations are required on this point, it is respectfully submitted that any dismissal on these grounds be with leave to replead.  *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion")(internal citations omitted).

entity that "regularly" purchases defaulted debts to collect for its own account is not a "debt collector" pursuant to the second prong of the definition in 15 U.S.C. § 1692a(6) covering a person who "regularly collects or attempts to collect ... **debts owed or due ... another**." (Emphasis added.)  Thus, Defendant does not address the dispositive issue here – that Congress chose to subject it to FDCPA coverage under the first prong of the § 1692a(6)'s alternative definition applicable to an entity engaging "in any business the principal purpose of which is the collection of any debts."   The Supreme Court expressly warned in *Henson* that "we do not attempt to" address this "principal purpose" prong because "the parties haven't much litigated that alternative definition and "in granting certiorari we didn't agree to address it." 2017 WL 2507342, *3. Defendant's exclusive reliance on *Henson* is accordingly unavailing.

As alleged in the Complaint, Defendant's sole business is that of a debt buyer.  *See,* Docket 1, ¶ 12.  Indeed, as Defendant concedes "TTC is a debt purchaser/creditor and seeks the redemption of outstanding municipal obligations for its own account." *See,* Docket 11, page 15.  This business model is precisely the type of debt collection activity that the plain language of the "principal purpose" prong covers. This alternative definition excludes the "owed or due another" component of the second definition that compelled the result in *Henson*, thus eliminating any basis for Defendant to claim that - because it is the current owner of the debt - it is exempt from Congress's efforts to rein in and regulate Defendant and its fellow professional debt buying industry members.

This conclusion was confirmed by other sources even before *Henson* was decided. For example, the seminal opinion of the 11th Circuit in *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015), the original precedent establishing the rule that the Supreme Court adopted in *Henson*, thoroughly explained how its ruling still preserved the FDCPA's applicability under the "principal purpose" definitional prong to a professional bad debt portfolio buyer such as

11

Defendant. 797 F.3d at 1316, n.8. The Supreme Court's pinpoint citation to *Davidson* when identifying the Circuit conflict precipitating its grant of certiorari expressly referenced the portion of the *Davidson* ruling preserving this distinction. 2017 WL 2507342, *2. In addition, years of regulatory enforcement by the agencies chosen by Congress to administer the FDCPA have consistently applied this statute to the bad debt portfolio buyer industry. This history shows the continued need for FDCPA coverage and vigorous enforcement as to this industry.

### A. *Henson* Does Not Apply to "Principal Purpose" Debt Buyers.

In *Henson,* the Supreme Court unanimously held that Santander was not a debt collector under one of the FDCPA's two definitions of "debt collector." This narrow opinion held that Santander was not subject to the FDCPA as an entity "regularly" collecting debts "owed or due another."   The Supreme Court explicitly stated that it was not addressing application of the FDCPA's alternative "principal purpose" definition, which was not at issue since it had not been presented by the parties and did not fall within the scope of its grant of review. 2017 WL 2507342, *3. As the Court of Appeals below had noted, "The complaint does not allege, nor do the plaintiffs argue, that Santander's *principal business* was to collect debt, alleging instead that Santander was a consumer finance company." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 137 (4th Cir. 2016).

The record in *Henson* showed that Santander was in the auto finance business and thus its principal business was extending credit.   It purchased a portfolio of auto paper from CitiFinancial.  A percentage of the $3.55 billion portfolio, consistent with the usual default rates on consumer automobile paper, was in default.  The plaintiffs' debts were among those in default. *See* 817 F.3d at 134, 140; *Henson v. Santander Consumer USA, Inc.*, 2014 WL 1806915, at *4 (D. Md. May 6, 2014).

The relevant portion of the FDCPA definition of "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6). Plainly, "[t]he FDCPA establishes two alternative predicates for 'debt collector' status — engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity. 15 U.S.C. § 1692a(6)." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004); *accord, Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015); *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Hester v. Graham, Bright & Smith*, 289 Fed. Appx. 35, 41 (5th Cir. 2008); *Little v. World Fin. Network, Inc.*, 1990 WL 516554, *2–4 (D. Conn. July 26, 1990) ("the two prongs of the statutory definition of debt collector are separated by a comma and the word 'or', indicating that there are alternative definitions."). An entity meeting either one of the two definitions qualifies as a debt collector.  *See Davidson v. Capital One Bank (USA), N.A.*, *supra*.

The *Henson* opinion held that, because Santander owned all legal and equitable rights to the debts in question, it did not qualify under the "regularly collects" part of the definition because the debts that it was collecting were not "owed or due or asserted to be owed or due another." The opinion does not purport to address entities engaged in "any business the principal purpose of which is the collection of any debts," and that portion of the statutory definition was disclaimed in briefs and oral argument. The Supreme Court accordingly limited the focus of its opinion:

> Second, the parties briefly allude to another statutory definition of the term "debt collector"—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts." §1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either.  [¶]  With these preliminaries by the board, we can turn to the much narrowed question properly before us.

13

*Henson,* 2017 WL 2507342, \*3.

In the relatively short time since *Henson* was decided, courts have already rejected the argument that an entity's current ownership of the debt completely disqualifies it as a "debt collector" and adopted the contrary rule that bad debt buyers are covered under the "principal purpose" prong. *Chenault v. Credit Corp. Solutions, Inc.,* 2017 WL 5971727, \*2 (E.D. Pa. Dec. 1, 2017) (concluding that debt buyer defendant was a debt collector under principal purpose prong); *Barbato v. Greystone Alliance, L.L.C.,* 2017 WL 5496047, \*10 (M.D. Pa. Nov. 16, 2017) (same); *Tepper v. Amos Fin., L.L.C.*, 2017 WL 3446886, \*8 (E.D. Pa. Aug. 11, 2017) (same); *Schweer v. HOVG, L.L.C.*, 2017 WL 2906504, \*5 (M.D. Pa. July 7, 2017) (same). *See also McMahon v. LVNV Funding, LLC*, 2018 WL 1316736, at \*14 (N.D. Ill. Mar. 14, 2018) ("a reasonable juror could reach a verdict in favor of plaintiff on the question of whether the principal purpose of LVNV's business is debt collection"); *Mitchell v. LVNV Funding, LLC,* 2017 WL 6406594, \*4-5 (N.D. Ind. Dec. 15, 2017) (concluding that "*Henson* explicitly did not address the first prong in the definition of a debt collector" and that "there exists a material factual dispute regarding LVNV's principal business activities"); *Skinner v. LVNV Funding*, 2018 WL 319320, \*3-4 (N.D. Ill. Jan. 8, 2018) (concluding that "a debt purchaser can still qualify as a debt collector under § 1692a(6) if its principal purpose is the collection of debts" but that plaintiff presented insufficient evidence regarding defendant's principal purpose).

Thus, as shown below, a debt buyer such as Defendant, whose primary or only business purpose is the acquisition and collection of portfolios of defaulted debts, remains a covered debt collector under the FDCPA.

**B.  "Owed or Due Another" Modifies *Only* the Second, "Regularly Collects" Definition of Debt Collector.**

The phrase "debts owed or due or asserted to be owed or due another" that was dispositive in *Henson* is properly read as modifying *only* the second prong of the definition, that is, one "who regularly collects or attempts to collect, directly or indirectly," and not the first prong, "any business the principal purpose of which is the collection of any debts."

The principle of statutory construction known as "the rule of the last antecedent" controls here. The Supreme Court has described this rule as follows:

> When this Court has interpreted statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent.' See *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). The rule provides that 'a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.' *Ibid.*; see also Black's Law Dictionary 1532–1533 (10th ed. 2014) ('[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing'); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012).

> *Lockhart v. United States*, 136 S. Ct. 958, 962-63, 194 L. Ed. 2d 48 (2016).

In *Lockhart*, the Court held that in a statute enhancing sentences for prior convictions for crimes "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," the limiting phrase "involving a minor or ward" applied only to "abusive sexual conduct" and not the other two crimes, so that a prior conviction for sexual abuse of an adult triggered the enhancement. Applying *Lockhart*, "the rule of the last antecedent" dictates that the FDCPA's definition of a "principal purpose" debt collector is not limited to those entities collecting debts "owed or due or asserted to be owed or due another."

Circuit Courts agree.  In *Davidson*, the 11th Circuit specifically stated that under the two-prong definition "'principal purpose' [is] not modified by 'owed or due another.'" 797 F.3d at

15

1316 n.8. The Ninth Circuit concurs. *Schlegel v. Wells Fargo Bank, N.A.,* 720 F.3d at 1209 ("This argument fails, because it would require us to overlook the word 'another' in the second definition of 'debt collector'").

The "last antecedent" principle applies with particular force in the case of the FDCPA definition of "debt collector," because the two prongs distinguish between collecting "debts owed or due or asserted to be owed or due another" and collecting "any debts." It is settled that "the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *see also HUD v. Rucker*, 535 U.S. 125, 131 (2002); *United States v. Clayton*, 613 F.3d 592, 596 (5th Cir. 2010) ("The CCPA uses the modifier 'any' in describing the tax debts to which it applies, a term we must construe as 'broad' and 'ha[ving] an expansive meaning.'" (quoting *Ali,* 552 U.S. at 219)). The Supreme Court has therefore explained that where, as here, Congress "did not add any language limiting the breadth of [the] word ['any']," it "must" be read "as referring to all" of the type to which it refers. *Gonzales*, 520 U.S. at 5; *see also Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186 (11th Cir.1997). "Any" is an all-encompassing term which "contains no hint of an exception." *Hutto v. Finney*, 437 U.S. 678, 694 (1978); *Brooks v. United States*, 337 U.S. 49, 51 (1949); *Duffy v. Landberg*, 133 F.3d 1120, 1122-23 (8th Cir. 1998) (FDCPA's use of "any obligation" is broad). In other words, the word "any" is as expansive as possible.

Applied here, "any debts" is facially broader than "debts owed or due or asserted to be owed or due another," since this latter usage defines a subset containing fewer than all debts. *See Davidson v. Capital One Bank (USA), N.A., 7*97 F.3d at 1316 n. 8 ("'Any debts' means 'all debts,' including debts acquired from another, in default, or owed to the collecting entity.") The "owed

or due or asserted to be owed or due another" language therefore cannot be applied to "any debts." Thus, the "principal purpose" definition covers all consumer debts, even if they are not owing to another and are instead owned by the debt collector defendant.

### C. Both "Regular" Debt Collectors and "Principal Purpose" Debt Buyers Are Regulated By The FDCPA Because They Can Operate Without Regard to Any Need to Preserve Consumer Good Will.

One justification for treating third party debt collectors and persons primarily engaged in the purchase and collection of debt as covered by the FDCPA is the fact that such entities do not need to preserve consumer "good will."  According to the legislative history of the FDCPA, creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," are not covered by the FDCPA, but entities who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them," are covered. S. Rep. 95–382, at 2 (1977), 1977 WL 16047, *2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696. *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir.1998) ("Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill," creditors who attempt to collect debts "in their own name and whose principal business is not debt collection ... are not subject to the [FDCPA].")

Neither third party collectors, nor in particular entities whose principal or sole business is the collection of debts, have "good will" in that sense–they are simply interested in collecting and are not interested in getting business in the future from the consumer.  *See, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1059 n. 1 (9th Cir. 2011) (referencing "the sizeable growth in the debt buying industry" and documenting "that the average price for purchase of an obsolete debt at $0.045 per dollar"). Their client is not the consumer at all, but the merchant or creditor that hires them or sells debts to them. As one court explained:

[T]here exists a logical distinction between the two types of entities identified in the alternative segments of the definition. The primary activity of an ordinary retailer (for example) is not the collection of debts, though it may regularly try to collect debts from its own customers. Such a company is constrained naturally in its debt collection activities with its own customers by concern over the effect of generating adversarial relationships. No such natural constraints exist if a company whose primary purpose is not debt collecting, such as a retailer, regularly collects debts for other companies, however, since any adversarial relationships stemming from debt collecting are generated with other companies' customers, and do not affect that company's primary activity. Furthermore, if a company's primary purpose is debt collection, then the natural constraints also do not apply, since that company's primary purpose is not dependent upon favorable relationships with customers. Thus, there are two situations where natural constraints do not protect against objectionable debt collection practices. The statutory definition of debt collector covered by the Act's prohibitions precisely identifies these two situations.

*Little v. World Fin. Network, Inc.*, 1990 WL 516554, *2–4 (D. Conn. July 26, 1990); *accord Davidson v. Capital One Bank (USA), N.A.,* 797 F.3d at 1316 n.8. However, a company like Santander, which is basically a credit grantor but acquires defaulted debts with sufficient frequency to meet the "regularly" test,[7] *does* have "good will" concerns and *does* want to obtain further business from consumers.

Defendant in contrast does not have such concerns. Its insulation from such market-based forces and constraints may explain at least in part the unfortunate history of predatory and unlawful collection misconduct documented by the FTC and the CFPB while enforcing the FDCPA against the defendant's bad debt portfolio buyer industry. See 15 U.S.C. § 1692l (Administrative enforcement). Among those actions is the following sampling that illustrates the critical need for FDCPA coverage of the bad debt portfolio buyer industry: *United States v. Capital Acquisitions*

---

[7] "[A] person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'" Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997). *Accord Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 61 (2nd Cir. 2004).

*& Management Corp.*, 2004 WL 577482 (2004) (FTC News Release, Consent Decree);[8] *In re Encore Capital Group, Inc., Midland Funding, L.L.C., Midland Credit Management, Inc., and Asset Acceptance Capital Corp*., 2015 WL 5667140 (Sept. 9, 2015) (CFPB Consent Order); *In re Portfolio Recovery Associates*, *L.L.C.,* 2015 WL 5667141 (Sept. 9, 2015) (CFPB Consent Order); *see also* FTC, Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration (July 2010);[9] FTC, The Structure and Practices of the Debt Buying Industry (Jan. 2013).[10]

In sum, Defendant agrees that TTC is a debt buyer, but relies on a misinterpretation of the Supreme Court's *Henson* opinion to argue that debt buyers are now all magically exempt from the FDCPA.  As reflected above, debt buyers are absolutely still encompassed within the reach of the FDCPA, although not under the second prong of 15 USC 1692a(6), which was the *sole* provision at issue in *Henson*.  As such, Defendant cannot simply rely on *Henson* to be exempt from all the consumer protections created by the FDCPA.

<u>**CONCLUSION**</u>

It is respectfully submitted that the Defendant's Motion to Dismiss the Complaint be denied in its entirety.  Defendants do not deny that they failed to provide the Plaintiff with the Validation Notice required by the FDCPA.  Instead, the Defendants argue that the Plaintiff was required to sign up for water services, and that these water bills could not therefore be considered a 'debt'

---

[8] Available at
https://www.ftc.gov/sites/default/files/documents/cases/2004/03/040324cag0223222.pdf.

[9]     Available     at     https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf.

[10] Available at https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf.

under the FDCPA.  As shown above, that argument is completely baseless.  Defendants similarly attempt to avoid liability under the FDCPA by claiming that they are not 'debt collectors' but those arguments are either flat-out wrong, or simply cannot be considered on a Rule 12 Motion.   It is therefore respectfully requested that the Defendant's Motion to Dismiss be denied, together with such other and further relief as this Court deems just and proper.

Dated: July 5, 2018

Respectfully submitted,

By:   /s/ Yitzchak Zelman_____
Yitzchak Zelman, Esq. (YZ5857)
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:      (732) 695-3282
Fax:          (732) 298-6256
*Attorney for the Plaintiff*
*David Truglio*