UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID TRUGLIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:18-CV-00746-SRU |
| ) | |
| THOMAS P. MALNATI and ) | |
| TTC INVESTMENTS I, LLC ) | |
| ) | |
| ) | |
| Defendants ) | July 19, 2018 |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OBJECTION TO MOTION TO DISMISS**

The defendants, Thomas P. Malnati, Esq. ("Malnati") and TTC Investments I, LLC ("TTC") (collectively, "Defendants"), submit this Memorandum of Law in reply to Plaintiff's Objection to Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    Preliminary Statement in Reply**

Plaintiff's complaint attempts to state a cause of action under the FDCPA. Defendants moved to dismiss the complaint stating that:

(1) the liens for New Britain waterworks and sewer system use are not FDCPA debts in that they do not arise out of a consensual consumer transaction, relying in great part on Boyd v. J.E. Robert Co., Inc., 765 F.3d 123 (2014), and further;

(2) that Plaintiff fails to allege facts to establish that either Defendant is a debt collector as that term is defined in the FDCPA. The only allegation relative to TTC is that TTC is a "debt buyer". The only allegation relative to Malnati is that he is a "debt

1

collector".   Both characterizations are mere labels and conclusions which are not entitled to any assumption of truth.

Defendants moved to dismiss *with prejudice* because the New Britain Waterworks and Sewer System liens are not FDCPA debts in that they are not founded on a consensual consumer transaction and because there exist no set of facts that could support the allegation that either Defendant is a debt collector as that term is defined in the FDCPA.

In its objection as to the first ground for dismissal Plaintiff asserts that an application to tie into the water main is tantamount to a consensual consumer transaction and, therefore, the waterworks portions of the liens are FDCPA debts.  Plaintiff's objection to the second ground for dismissal that neither Defendant is a debt collector is to ignore the standard of review for a motion to dismiss.  It is not sufficient to state mere labels and conclusions that Malnati is a debt collector and the TTC is a debt buyer and therefore a debt collector.

In this Reply the Defendants will show, as a matter of law, that:

(1) the liens for the use of New Britain's waterworks and sewer system are not FDCPA debts because (a) the liens are not founded upon a consensual consumer transaction, in which the Plaintiff was a party; (b) it is not accurate to suggest that the waterworks, where available, is not a mandatory charge; and (c) in all respects <u>Boyd</u> is directly on point and controlling.

(2) Not a single case cited by Plaintiff stands for the proposition that alleging the mere conclusion that Malnati is a debt collector or citing the statutory definition is sufficient to withstand a motion to dismiss.  Similarly, the allegation that TTC is a "debt buyer" is meaningless.  To withstand a motion to dismiss Plaintiff must allege sufficient <u>facts</u> to support the claim that Malnati and TTC are "debt collectors".

It is important to note that water for most Connecticut residents and municipalities is supplied by private companies which operate under rules and regulations different from those applicable to municipalities authorized by special acts to operate their own waterworks.   New Britain operates its own waterworks pursuant to a special act of the legislature.

**II.      Plaintiff Fails to State the Correct Standard of Review of a Motion to Dismiss**

Plaintiff fails to mention the seminal case Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) and misstates the holding of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Twombly, 550 U.S. at 570 makes clear that a district court may dismiss a complaint if factual allegations are not sufficient.  "A plaintiff must provide the grounds for entitlement to relief beyond mere labels and conclusions." Twombly, 550 U.S. at 555.  Plaintiff asserts falsely that Iqbal stands for the proposition that to survive a motion to dismiss, a complaint need only set out enough facts to state a claim to relief.  Iqbal actually reaffirms Twombly in holding that for a motion to dismiss the tenet that a court accepts as true all the factual allegations in the complaint "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 678.

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient and such statements are not entitled to a presumption of truth. Ashcroft, 556 U.S. at 678.  Iqbal and Twombly prescribe a two-step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement of relief." Id. at 664; see also Scott v. Town of Monroe, 306 F.Supp.2d 191, 198 (D. Conn. 2004) ("When a complaint is based solely on wholly conclusory allegations and provides no factual

3

support for such claims, it is appropriate to grant defendant's motion to dismiss."); In re Fosamax Products Liab. Litig., 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010) (For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible.").

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. It refers to whether the non-conclusory factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; quoting Twombly, 550 U.S. at 557. A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

a.  As to TTC

The allegations in Plaintiff's Complaint relative to TTC appear in Paragraphs 12 and 13. In Para. 12 Plaintiff alleges that TTC is a debt buyer. The term "debt buyer" or debt purchaser" is meaningless under the FDCPA. The Supreme Court in Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) dispensed with the idea that being a debt buyer carries with it any automatic liability. Justice Gorsuch considered the "woulda, coulda, shoulda" arguments of the plaintiff/appellant Henson and a unanimous court agreed that the FDCPA does not accord civil liability just for being a debt buyer. Yet, the Plaintiff herein makes the same arguments for debt buyer liability that the Henson Court rejected.

Liability may result only upon being found to be a "debt collector" as that term is defined in the FDCPA.  In Paragraph 13 Plaintiff alleges TTC is a debt collector without providing any factual support.  "Debt collector" is a legal conclusion which is insufficient under Twombly and Iqbal to survive a motion to dismiss.   Plaintiff must allege sufficient facts to support that legal conclusion.   Defendants have established that TTC does not qualify as a debt collector under the second prong of the definition found at 15 USC 1692a(6).  So, Plaintiff turns to the first prong which reads: "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."  Plaintiff does not allege any facts to support this prong or for that matter the legal conclusion that TTC is a debt collector.  Not only is debt collection not TTC's principal purpose, TTC takes no action of any kind to collect the liens it purchases.  TTC acquired the New Britain liens at full redemptive value.  TTC engaged Malnati to spur redemption.   TTC's principal purpose is not debt collection, nor does it take any action to collect the waterworks and sewer system use liens.  Plaintiff does not allege facts sufficient to support the idea that TTC's principal purpose is debt collection or that TTC even uses instrumentalities of interstate commerce or the mails to collect the waterworks and sewer system use liens.

No case cited by the Plaintiff holds that alleging mere conclusions that a defendant is a debt collector is sufficient.  One case cited by Plaintiff, Schlegel v. Wells Fargo Bank, N.A., 720 F.3d 1204, 1208 (9th Cir. 2013) found that the factual allegations of the plaintiff did not support the conclusion that Wells Fargo's principal purpose was debt collection.  The 9th Circuit rejected the argument that it is sufficient to suggest "any activity which has the principal purpose of collecting debts" to establish principal purpose.   Plaintiff's argument is virtually identical to the argument rejected by the 9th Circuit.

b. As to Malnati

Plaintiff must allege facts to support the allegation that Malnati is a debt collector as defined in the FDCPA. Defendants have asserted that Malnati specializes in tax collection and other non FDCPA governmental debts in numerous states and taxing jurisdictions. However, Plaintiff has not alleged facts to support either prong of the FDCPA definition of "debt collector". Plaintiff cannot rely on reciting the FDCPA's definition of debt collector. Plaintiff must recite facts, which Plaintiff cannot. Plaintiff provides no further argument in its Opposition other than to recite the statutory definition of "debt collector" and to point to the subject collection letter which, Plaintiff contends, "informed the Plaintiff—in all caps—that "Thomas P. Malnati, Esq. is a debt collector…" *Memorandum of Law in Opposition, p. 3*. Plaintiff's argument is unavailing for two reasons. First, Malnati's statement that he is debt collector is not an admission that he is a debt collector *under the FDCPA*. "[A]n entity may generally be a 'debt collector' without being a 'debt collector' in a specific situation." *See* Prince v. NCO Financial Services, Inc., 346 F. Supp.2d 744 (E.D. PA, 2004) (holding that statement "this is a communication from a debt collector" was not necessarily an admission that defendant was a debt collector under the FDCPA).

So, Plaintiff turns to the footer that appears on the Notice Malnati sent which reads: "Thomas P. Malnati, Esq. is a debt collector and any information obtained will be used for that purpose." But the inclusion of this statement does not support either prong of the definition of debt collector. Neither can it be construed to be an admission that Malnati is an FDCPA debt collector nor that the waterworks and sewer use liens are FDCPA debts. This is, rather, evidence of strict compliance with Connecticut laws. These include the statutes regarding the assignment of municipal tax liens CGS Sec 12-195h, sewer use liens CGS Sec 7-254(c), waterworks use

liens CGS Sec. 7-239(c) and most significantly for our purposes, revisions to the Consumer Collection Agencies Act, CGS Sec 36a-800 et seq.

Connecticut is unique in making municipal taxes and municipal non-FDCPA debts such as waterworks and sewer use liens (all of which are collectable as taxes) subject to Connecticut's mini-FDCPA.  Connecticut's mini-FDCPA tracks for the most part the wording of the FDCPA.  When these revisions were first proposed in 2001, it was pointed out that municipal tax collection is highly regulated by Connecticut law and that some provisions of the mini-FDCPA are incompatible with tax collection.  The legislature authorized the Department of Banking to adopt regulations to address this.  The regulations can be found at Regulations of Connecticut State Agencies, Section 36a-809-1 to 36a-809-17, a copy of which is attached.  Many of the FDCPA provisions are not applicable to the collection of municipal property tax debts.  However, other provisions of the mini-FDCPA survive including those regarding harassment or abuse, unfair practices and the mini-Miranda warning.  The City of New Britain requires that all those collecting assigned liens adhere to all Connecticut laws applicable to tax collection.

**III.     No Consensual Consumer Transaction for Waterworks and Sewer System Use**

Plaintiff argues that New Britain's Waterworks Use Charges are FDCPA debts and points to footnote 4 of Boyd, 765 F3d at 126 where the Court distinguishes between Pennsylvania's water and sewer charges from New York City's in that nothing in the record in Boyd suggests that plaintiffs therein must request water and sewer service.  Plaintiff asserts that, unlike the sewer system, it is not mandatory to pay for and use New Britain's waterworks.  Plaintiff quotes New Britain Ordinance Sec 23-170: *Application for installation and renewal of water service line* and suggests that this application is unique to the water service line and constitutes the consensual consumer transaction requirement.  However, none of these assertions are accurate.

7

The application for installation is not unique to New Britain waterworks. New Britain Code Sec. 23-1 requires a permit for connection to both the waterworks and sewer systems. Both New Britain permitting applications are attached. NYC also requires application to tie into both the water and sewer system. All these applications serve the singular purpose of ensuring that only experienced, licensed and bonded contractors perform the work involved. None of these applications constitute a consensual consumer transaction. If so, the Court in <u>Boyd</u> would have so found.

Furthermore, it is mandatory for property owners adjacent to a street with a new water main to pay a special assessment for its construction in respect of the benefit provided just by being available. New Britain Charter Sec 15-4 (m), derived from S.L. 1923, No. 243, reads as follows:

> **Extension of mains; assessments.** When, in the opinion of the Board of Water Commissioners, public convenience and necessity shall require the extension of any main pipe within the City or other localities where the Board of Water Commissioners is empowered to make extensions and it shall vote to make such extension, said **Board shall assess the cost of such extension, as hereinafter provided, against the land and the buildings thereon, found by said Board to be especially benefited thereby and abutting upon the road, street or highway in which such main is to be laid, in proportion to the frontage of such land upon such road, street and highway.**

New Britain Charter Sec 15-4 (p), derived from S.L. 1923, No. 243 provides that, if a property owner assessed the cost of the construction of the water main does tap into the line, the rates for use are credited against the construction assessment:

> **Rate of assessment; term.** Upon the completion of the construction of such water main, said Board shall assess upon the owners of record of the land and buildings specially benefited thereby a sum equal to ten per cent of the cost of the improvement, **less the actual receipts from water rents for each preceding year from date**, in proportion to the frontage of such land upon such road, street or highway. Each year thereafter, for not more than ten years from the completion of such extension, said Board shall assess, in the same manner and on the same basis, the owners of record of such property.

CGS Sec. 7-239[1] requires that the rates for use of the waterworks system be just and equitable. Water is not being sold or purchased. Rather, the statutory requirement that rates for

---

[1] **Sec. 7-239. Rates for use.** (a) The legislative body shall establish just and equitable rates or charges for the use of the waterworks system authorized in this subsection, to be paid by the owner of each lot or building which is connected with and uses such system, and may change such rates or charges from time to time. Such rates or charges shall be sufficient in each year for the payment of the expense of operation, repair, replacements and maintenance of such system and for the payment of the sums in this subsection required to be paid into the sinking fund. In establishing such rates or charges, the legislative body shall consider measures that promote water conservation and reduce the demand on the state's water and energy resources. Such rates or charges may include: (1) Demand projections that recognize the effects of conservation, (2) implementation of metering and measures to provide timely price signals to consumers, (3) multiyear rate plans, (4) measures to reduce system water losses; and (5) alternative rate designs that promote conservation. No such rate or charge shall be established until after a public hearing at which all the users of the waterworks system and the owners of property served or to be served and others interested shall have an opportunity to be heard concerning such proposed rate or charge. Notice of such hearing shall be given, at least ten days before the date set therefor, in a newspaper having a circulation in such municipality. Such notice shall set forth a schedule of rates or charges, and a copy of the schedule of rates or charges established shall be kept on file in the office of the legislative body and in the office of the clerk of the municipality, and shall be open to inspection by the public. The rates or charges so established for any class of users or property served shall be extended to cover any additional premises thereafter served which are within the same class, without the necessity of a hearing thereon. Any change in such rates or charges may be made in the same manner in which they were established, provided, if any change is made substantially pro rata as to all classes of service, no hearing shall be required. The provisions of this section shall not apply to the sale of bottled water.
  (b) If any rates or charges established pursuant to this section are not paid within thirty days after the due date, demand for such rates or charges may be made on the owner of the premises served in the manner provided in subsection (a) of section 12-155, and thereafter an alias tax warrant may be issued in the manner provided in sections 12-135 and 12-162. The rates or charges established pursuant to this section, if not paid when due, shall constitute a lien upon the premises served and a charge against the owner thereof, which lien and charge shall bear interest at the same rate as would unpaid taxes. Such a lien not released of record prior to October 1, 1993, shall not continue for more than two years unless the superintendent of the waterworks system has filed a certificate of continuation of the lien in the manner provided under section 12-174 for the continuance of tax liens, and when so continued shall be valid for fifteen years. A lien described in this section shall take precedence over all other liens or encumbrances except taxes and may be foreclosed against the lot or building served in the same manner as a lien for taxes.
  (c) Any municipality, by resolution of its legislative body, may assign, for consideration, any and all liens filed by the superintendent of the waterworks system or tax collector to secure unpaid water charges as provided under the provisions of this chapter. The consideration received by the municipality shall be negotiated between the municipality and the assignee. The assignee or assignees of such liens shall have and possess the same powers and rights at law or in equity as such municipality and municipality's tax collector would have had if the lien had not been assigned with regard to the precedence and priority of such lien, the accrual of interest and the fees and expenses of collection. The assignee shall have the same rights to enforce such liens as any private party holding a lien on real property, including, but not limited to, foreclosure and a suit on the debt. Costs and reasonable attorneys' fees incurred by the assignee as a result of any foreclosure action or other legal proceeding brought pursuant to this section and directly related to the proceeding shall be taxed in any such proceeding against each person having title to any property subject to the proceedings. Such costs and fees may be collected by the assignee at any time after demand for payment has been made by the assignee.
  (d) The amount of any such rate or charge which remains due and unpaid for thirty days may, with reasonable attorneys' fees, be recovered by the legislative body in a civil action in the name of the municipality against such owners. The municipality shall be subject to the same rates or charges under the same conditions as other users of such waterworks system.

use be just and equitable is satisfied by metering consumption. Also, CGS 7-239(b) makes it clear that the nonpayment of the rates or charges is to be treated in the same manner as a tax warrant. The statute is subsection (c) further allows for the municipality to assign the liens and that the assignee assumes the same rights to enforce the liens as the municipality would have.

A budget for the operation of the waterworks is published and the rates are set after a public hearing. This process is identical to establishing a municipal tax rate. No consensual consumer transaction is involved in setting the rates for use. The rates for use are a mandatory charge against the owner of record, just as are taxes. At no time did the Plaintiff herein "request" sewer or water service, as did the plaintiffs in *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000).

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's FDCPA claims against TTC and Malnati should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). All claims should be dismissed with prejudice.

Dated: Westport, Connecticut
July 19, 2018

                THE DEFENDANTS,
                THOMAS P. MALNATI and
                TTC INVESTMENTS I, LLC


                By:  /s/ Gregory S. Kimmel
                    Gregory S. Kimmel
                    Berchem Moses P.C.
                    1221 Post Road East, Suite 301
                    Westport, CT 06880
                    (203) 227-9545
                    Federal Bar No. ct28203
                    Email:  gkimmel@berchemmoses.com

## **CERTIFICATION**

I hereby certify that on July 19, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ Gregory S. Kimmel
Gregory S. Kimmel