UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID TRUGLIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:18-CV-00746-SRU |
| ) | |
| THOMAS P. MALNATI and ) | |
| TTC INVESTMENTS I, LLC ) | |
| ) | |
| ) | |
| Defendants ) | November 12, 2018 |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I. PRELIMINARY STATEMENT

On June 13, 2018, the defendants, Thomas P. Malnati and TTC Investments I, LLC moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint, with prejudice, for failure to state a claim upon which relief may be granted. The plaintiff, David Truglio, objected to defendants' motion to dismiss contending, *inter alia*, that the City of New Britain does not require its property owners to connect to the municipal water system. Thus, plaintiff argues, property owners' voluntary consumption of water constitutes a *pro tanto* exchange covered by the Fair Debt Collection Practices Act, 15 U.S.C. 1691 et seq. ("FDCPA").

II. LAW AND ARGUMENT

Contrary to plaintiff's argument, the City of New Britain does, in fact, require property owners to connect to its municipal water system.[1] The New Britain Code of Ordinances § 21-168

---

[1] In its Memorandum of Law in Opposition to Defendant's Motion to Dismiss, plaintiff states "Defendant has done a thorough job laying out New Britain's requirements regarding the use of the City's *sewer* system. A careful scrutiny of Defendant's briefing reflects no parallel mandatory requirements for the provision of *water* services. This is no mere oversight either. When perusing New Britain's Ordinances, there is a conspicuous lack of any parallel language, requiring residents to connect their homes to the City's water system...Absent any requirement for

(Rev. 2017) provides that property owners are required to connect to both sewer *and* water when the street upon which their property abuts is either (i) paved; or (ii) repaired with a hard surface. Specifically, § 21-168 provides, "[i]f a street is to be paved or repaired with a hard surface, each abutting property owner shall be notified by the department of public works, by mail to the last known address of such owner or by notice published in a city newspaper at least two (2) weeks before the paving or repairs are commenced.  Thereafter, every such owner *shall* connect his premises with the main lines of sewers, water and gas by service pipes from such mains in the street to be paved or repaired to the inside of the curb or paving line of the street.  The property owner shall also lay a curb in front of such premises, if not already laid." *New Britain Code of Ordinances ("Code") § 21-168(a)*.  (Emphasis added) (§ 21-168 is attached hereto as <u>Exhibit A</u>).

If a property owner fails or neglects to timely connect to the City's water main, "the work may be done by the department of public works, and the expense thereof shall be borne by the property owner and the same shall be and remain a lien upon the property to be enforced and collected as other city liens." *Code § 21-168(b)*.

The requirement that property owners connect their premises to municipal water can be traced back to 1908. Section 39 of the Ordinances and Standing Rules of the Common Council of the City of New Britain, Connecticut (Rev. Nov. 1, 1908) provided, "In case a street is to be paved with macadam, asphalt, or block stone, or to be repaired in a general way with any substance except earth, all abutting property owners….*shall* connect such premises with the main lines of sewer, water and gas by service pipes from said mains in such street to the inside of the curb or paving line of such street, if not already connected…" *Ordinances and Standing Rules of*

---

individuals to connect their homes to the City's water system, any decision to do so is a voluntary request for water services, and a concurrent promise to pay for any water consumed."

{01186772.DOCX Ver. 1}

*the Common Council of the City of New Britain, Connecticut (Revised November 1, 1908).* (Attached hereto as Exhibit B).

A review of the plain and unambiguous language of the Ordinance reveals that one's duty to connect his or her premises to municipal water is mandatory—not merely directory or voluntary as plaintiff contends. As an initial matter, "a local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." Raymond v. Zoning Board of Appeals of City of Norwalk, 76 Conn. App. 222, 234, 820 A.2d 275 (2003).

Under Connecticut law, "[d]efinitive words, such as must or shall, ordinarily express legislative mandates of nondiscretionary nature." (Internal quotation marks omitted) Wiseman v. Armstrong, 295 Conn. 94, 101, 989 A.2d 1027 (2010); *see also* Stewart v. Tunxis Service Center, 237 Conn. 71, 78, 676 A.2d 819 (1996) ("[t]he usual rule is that [t]he legislature's use of the word 'shall' generally evidences an intent that the statute be interpreted as mandatory."). In Rainforest Café, Inc. v. Dept. of Revenue Services, the Connecticut Supreme Court held that "the word 'shall' creates a mandatory duty when it is juxtaposed with [a] substantive action verb." (Internal quotation marks omitted) Rainforest Café, Inc. v. Dept. of Revenue Services, 293 Conn. 363, 371-73, 977 A.2d 650 (2009).

In applying these principles to § 21-168, the text states that "every property owner shall connect his premises with the main lines of sewers, water and gas…" This language juxtaposes "shall" with the verb "connect."  Connection to sewer, water and gas, moreover, is the purpose of the ordinance (as evidenced by its title: "*Connections with water, sewer and gas lines*"), and is not merely a matter of convenience.  This is further evidenced by the text of § 21-168(b) of the Code, which permits the municipality to complete the required connection and lien the property,

in the event an owner fails or neglects to connect his or her premises in compliance with § 21-168(a).  Therefore, contrary to plaintiff's assertion, § 21-168 of the Code of Ordinances does, in fact, impose a mandatory duty on New Britain property owners to connect their premises to the municipal water system.[2]

Plaintiff's property, known as 123 Virginia Avenue, was improved with a residence in 1960 and abuts Virginia Avenue, a public highway located within the territorial boundaries of the City of New Britain. See Assessor's Field Card attached hereto as <u>Exhibit C</u>.  Virginia Avenue was originally constructed in 1930 and most recently repaved in 2003. Therefore, assuming, for the sake of argument, that plaintiff's property was not connected to municipal water when it was originally constructed in 1960, plaintiff, or the contemporary owner, would have been *required* by § 21-168 of the Code to connect the property to the municipal water main in 2003 when Virginia Avenue was repaved.

There was nothing "voluntary" about plaintiff's connection to the municipal water system. The plaintiff was required to connect his premises to the water mains and the New Britain Water Department has a retail monopoly within the territorial boundaries of the municipality—i.e., it is the *sole provider* of water for New Britain residents. Therefore, the current matter is distinguishable from the Third Circuit decisions cited by plaintiff, in that property owners in New Britain cannot "voluntarily elect[ ] to avail [themselves] of municipal

---

[2] The New Britain Board of Water Commissioners was originally authorized by the Municipal Special Charter dated June 4, 1857, to provide water supply.  By Special Act dated May 30, 1860, it was authorized to provide service to New Britain and adjacent municipalities.  Furthermore, as a political subdivision of the State of Connecticut, the City of New Britain is authorized to establish a municipal water utility under Connecticut General Statutes §§ 7-234 and 7-148(c)(4)(G).

The Connecticut General Statutes provide for retail water monopolies through the designation of exclusive service areas. See Connecticut General Statutes § 25-33d (c) (defining "[e]xclusive service area" as "an area where public water is supplied by one system."); Regs., Conn. State Agencies § 25-33h-1. The City of New Britain is served *exclusively* by the New Britain Water Department.

water/sewer services." Piper v. Portnoff Law Assocs., 396 F.3d 227, 233 n. 8 (3d Cir. 2005).[3] Due to the fact that the subject sewer and water charges are mandatory and involuntary, the Second Circuit's decision in Boyd v. J.E. Robert Co., Inc., 765 F.3d 123 (2d Cir. 2014) should control.

As more thoroughly discussed in defendants' Memorandum in Support of Motion to Dismiss (Doc. No. 11), the subject sewer and water liens did not arise from a consensual consumer "transaction" or any other type of business dealing, as required to invoke the FDCPA. The plaintiff did not, and could not, negotiate or enter into any contract or agreement with the City of New Britain with respect to the water and sewer use charges.  Pursuant to local Ordinance, the plaintiff's property was required to be connected to both municipal water and sewer. The plaintiff was supplied with water at rates provided by the City of New Britain and the delinquent charges were liened by the City "in the same manner as a lien for taxes."  See Conn. Gen. Stat. § 7-239.  Thus, as the Second Circuit held in Boyd, the subject water and sewer charges "are best treated as akin to…municipal property taxes."  Boyd, *supra* 765 F.3d at 126.[4]

III.   CONCLUSION

For the foregoing reasons, plaintiff's FDCPA claims against defendants should be dismissed with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

---

[3] Private companies serve the water and sewage needs of property owners in the City of Pittsburg and serve as *an alternative* to municipal public utilities.  This fact lends credence to the court's determination that water users in Piper v. Portnoff Law Assocs., 396 F.3d 227 (3d Cir. 2005) exercised a level of consent not present in the instant case.  See Boyd v. J,E. Roberts Co., 2013 WL 5436969 at *8 (E.D.N.Y., Sept. 27, 2013) (Matsumoto, J.).

[4] The trial court in Boyd, expressly rejected plaintiff's argument that metered usage gives rise to a consensual transaction under the FDCPA.  The court declined to adopt such reasoning where, as in the present case, "property owners have no choice in determining whether or not to use municipal water services." See Boyd v. J,E. Roberts Co., 2013 WL 5436969 at *8 (E.D.N.Y., Sept. 27, 2013) (Matsumoto, J.).

        DEFENDANTS,
        THOMAS P. MALNATI and
        TTC INVESTMENTS I, LLC


By: /s/ Gregory S. Kimmel
     Gregory S. Kimmel
     Berchem Moses P.C.
     1221 Post Road East, Suite 301
     Westport, CT 06880
     (203) 227-9545
     Federal Bar No. ct28203
     gkimmel@berchemmoses.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on November 12, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                        /s/ Gregory S. Kimmel
                                        Gregory S. Kimmel, Esq.